# 25-810-cv

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT



JOSE HUERTA, individually and on behalf of all others similarly situated, VINICIO MERA, individually and on behalf of all others similarly situated, JOSE FLOREZ, individually and on behalf of all others similarly, ELVIA BORJA, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellees,*

*v.*

J.D. WORKFORCE, INC.,

*Defendant-Cross-Claimant-Appellant,*

STEVE DEANE,

*Defendant-Appellant,*

*(Caption Continued on the Reverse)*

———————————

*On Appeal from the United States District Court
for the Southern District of New York*

## BRIEF FOR DEFENDANT-CROSS-CLAIMANT-APPELLANT AND DEFENDANT-APPELLANT

Emanuel Kataev
SAGE LEGAL LLC
*Attorneys for Defendant-Cross-Claimant-
Appellant and Defendant-Appellant*
18211 Jamaica Avenue
Jamaica, New York 11423
718-412-2421



(212) 719-0990
appeals@phpny.com

Marav USA LLC, DBA Bingo Wholesale, Hamwattie Bissoon,

*Defendants,*

David Weiss, Marav Monsey LLC,

*Defendants-Cross-Claimants.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel of record for Defendant-Appellant J.D. Workforce, Inc. states that there are no parent corporations or any publicly held corporation which owns ten percent (10%) or more of its respective stock.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .......................................................i

TABLE OF AUTHORITIES ..................................................................iv

STATEMENT OF JURISDICTION..........................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE................................................................2

    A.  Nature of the Case and Relevant Procedural History ...................2

    B.  Statement of Facts ...............................................................4

SUMMARY OF THE ARGUMENT .......................................................5

ARGUMENT ....................................................................................6

    APPELLATE STANDARD OF REVIEW............................................6

        i.   Sufficiency of FLSA Allegations..........................................7

       ii.  Failure to Exhaust Administrative Remedies under the
           ADA ......................................................................8

    POINT I

    PLAINTIFF FAILED TO PLEAD AN FLSA CLAIM....................................10

    POINT II

    THE COMPLAINT FAILS TO EXHAUST ADMINISTRATIVE
    REMEDIES..................................................................................13

POINT III

PLAINTIFFS MUST BE DENIED LEAVE TO AMEND THE
COMPLAINT ..................................................................................24

CONCLUSION..........................................................................................26

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(a)(6) ..................27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .....................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)...................................................................6, 7, 12

Banco Safra S.A.-Cayman Is. Branch v Samarco Mineracao S.A.,
  No. 19-3976-CV, 2021 WL 825743 (2d Cir. Mar. 4, 2021) .............................25

Bell Atlantic Corp. v. Twombly,
  550 U.S. 553-554 (2007) .............................................................7

Burke v. New York City Tr. Auth.,
  758 Fed. Appx. 192 (2d Cir. 2019),
  cert denied, 140 S.Ct. 852 (2020) ...................................................7

Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,
  467 U.S. 837 (1984)...................................................................17

City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,
  752 F.3d 173 (2d Cir. 2014) .........................................................25

Dejesus v HF Mgt. Services, LLC,
  726 F.3d 85 (2d Cir. 2013) .........................................................5, 8

Fed. Hous. Fin. Agency v. UBS Americas Inc.,
  712 F.3d 136 (2d Cir. 2013) .........................................................23

Fernandez v. Zoni Language Centers, Inc.,
  858 F.3d 45 (2d Cir. 2017) .........................................................8

Fort Bend County v. Davis,
  139 S.Ct. 1843 (2019)...............................................................14

Fowlkes v. Ironworkers Local 40,
  790 F.3d 378 (2d Cir. 2015) .........................................................21

Francis v. City of New York,
  235 F.3d 763 (2d Cir. 2000) .........................................................9

iv

Gibb v. Tapestry, Inc.,
    No. 18-CV-6888 (LAP), 2018 U.S. Dist. LEXIS 204112
    (S.D.N.Y. Nov. 30, 2018) .........................................................................9, 10, 13

Glatt v. Fox Searchlight Pictures, Inc.,
    811 F.3d 528 (2d Cir. 2015) ...................................................................8

Gorman v Consol. Edison Corp.,
    488 F.3d 586 (2d Cir. 2007) .................................................................12, 13

Hardaway v. Hartford Pub. Works Dep't,
    879 F.3d 486 (2d Cir. 2018) ...................................................................8

Henschke v. N.Y. Hosp.-Cornell Med. Ctr.,
    821 F. Supp. 166 (S.D.N.Y. 1993) .....................................................10

Herrera v. Comme des Garcons, Ltd.,
    84 F.4th 110 (2d Cir. 2023) ...............................................3, 5, 10, 11

Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,
    274 F.3d 683 (2d Cir. 2001) ...................................................................9

Lundy v. Catholic Health Sys. of Long Island Inc.,
    711 F.3d 106 (2d Cir. 2013) ...............................................5, 7, 8, 11

Martini v. Federal National Mortgage Ass'n,
    178 F.3d 1336 (D.C. Cir. 1999),
    cert. dismissed, 528 U.S. 1147 (2000).........................................................*passim*

Mills v. Jefferson Bank E.,
    559 F. Supp. 34 (D. Colo. 1983).........................................................18

Montesano v. Principi,
    47 Fed. Appx. 608 (2d Cir. 2002).......................................................21

Montoya v. Valencia County,
    872 F. Supp. 904 (D.N.M. 1994).........................................................17

Nakahata v. New York–Presbyterian Healthcare Sys.,
    723 F.3d 192 (2d Cir. 2013) .......................................................5, 7, 8

New York v. Holiday Inns, Inc.,
    656 F. Supp. 675 (W.D.N.Y. 1984).....................................................18

Occidental Life Insurance Co. of California v. EEOC,
    432 U.S. 355 (1977).................................................................17, 18

Paleja v. KP NY Operations LLC,
    No. 21-286-CV, 2022 WL 364007 (2d Cir. Feb. 8, 2022).................................12

Porat v. Lincoln Towers Cmty. Ass'n,
    464 F.3d 274 (2d Cir. 2006) ..................................................................25

Rodriguez v. Connection Tech.,
    65 F. Supp. 2d 107 (E.D.N.Y. 1999) .....................................................10

Rothstein v. UBS AG,
    708 F.3d 82 (2d Cir. 2013) ..................................................................6

Saulsbury v. Wismer & Becker, Inc.,
    644 F.2d 1251 (9th Cir. 1980) .........................................................20, 21

Shimon v. Equifax Info. Servs. LLC,
    994 F.3d 88 (2d Cir. 2021) ................................................................24

Sims v. Trus Joist MacMillan,
    22 F.3d 1059 (11th Cir. 1994) ......................................................19, 20, 21

TechnoMarine SA v. Giftports, Inc.,
    758 F.3d 493 (2d Cir. 2014) ...............................................................25

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)..........................................................................7

Walker v. United Parcel Serv. Inc.,
    240 F.3d 1268 (10th Cir. 2001) .......................................................19, 20

Walling v. Youngerman–Reynolds Hardwood Co.,
    325 U.S. 419 (1945)......................................................................12, 13

Weise v. Syracuse Univ.,
    522 F.2d 397 (2d Cir.1975) ............................................................21, 22

**Statutes**

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

vi

29 U.S.C. §§ 206–207 .................................................................8

29 U.S.C. § 207(a)(1) ...............................................................11

29 U.S.C. § 216(b) ......................................................................1

42 U.S.C. § 2000e-5(b) ...............................................16, 19, 22

42 U.S.C. § 2000e-5(f)(1) ...................................................*passim*

42 U.S.C. § 12101 ........................................................................1

42 U.S.C. § 12117 ......................................................................8

Civil Rights Act of 1964 § 2000e5(f)(1) ..............................17

Civil Rights Act of 1964 Title VII ....................................*passim*

**Rules**

Federal Rules of Civil Procedure Rule 8 ............................21

Federal Rules of Civil Procedure Rule 12(b)(1) .............19, 20

Federal Rules of Civil Procedure Rule 12(b)(6)........6, 19, 21

Federal Rules of Civil Procedure Rule 56 .....................19, 20

**Regulations**

29 C.F.R. § 778.109 ....................................................................8

29 C.F.R. § 1601.28 .................................................................17

29 C.F.R. § 1601.28(a)(2) ..............................................16, 17, 22

**Other Authorities**

5B C. Wright & A. Miller, Federal Practice and Procedure
  § 1357 (3d ed. 2004 & Supp. 2007).................................7

118 CONG. REC. 1069 (1972)...............................................24

118 CONG. REC. 7168 (1972)...............................................23

H.R.REP. NO. 92–238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137 ...................23

S.REP. NO. 92–415 (1971).........................................................................23

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction in the underlying case pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216(b), and 42 U.S.C. § 12101, *et seq.* On March 3, 2025, the district court, the Hon. Kenneth M. Karas ("Judge Karas"), United States District Court Judge for the Southern District of New York in Case No. 7:23-cv-5382 (KMK) (AEK), issued an Opinion & Order denying Defendants' motion to dismiss for failure to state a claim upon which relief can be granted. (A138-A166.)[1]  Defendant-Appellants filed a timely notice of appeal from this final order on April 2, 2025.  (A167.)  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Did the lower court err in finding that the complaint states a claim upon which relief can be granted for Plaintiffs' wage-and-hour claims under the Fair Labor Standards Act ("FLSA")?

Did the lower court err in finding that early right-to-sue letters are permissible in light of the clear statutory requirement that a charge of discrimination must be pending with the United States Equal Employment Opportunity Commission ("EEOC") for six months before issuing a notice of right to sue?

---

[1] "A" references are to the Joint Appendix filed with Defendant-Appellants' brief.

## STATEMENT OF THE CASE

**A.     Nature of the Case and Relevant Procedural History**

Plaintiff-Appellees ("Plaintiffs") commenced this case on June 26, 2023 asserting causes of action under: (i) the Fair Labor Standards Act ("FLSA"); (ii) the New York Labor Law ("NYLL"); and (iii) the New York State Human Rights Law ("NYSHRL") for disability discrimination and failure to accommodate.  (A6, A14-A34.)

On September 18, 2023, Defendants-Appellants J.D. Workforce, Inc. ("JD"), Hamwattie Bissoon ("Bissoon"), and Steven Deane ("Deane") (JD, Bissoon, and Deane collectively hereinafter the "JD Defendants") moved the district court by letter motion for a pre-motion conference in anticipation of their motion to dismiss for failure to state a claim upon which relief can be granted (A8, A35-38).  The JD Defendants argued there that the complaint must be dismissed because Plaintiffs' allegations fail to state a claim upon which relief can be granted and that the district court should decline to exercise supplemental jurisdiction over Plaintiff Jose Huerta's ("Huerta") NYSHRL claim (A35-37).

On September 25, 2023, Plaintiffs opposed and exercised their right to file an amended pleading consistent with the district court's individual rules  (A39).

Plaintiffs filed their amended complaint on October 17, 2023.  (A41-69).  They added a claim under the Americans with Disabilities Act ("ADA").  (A62-63).

In addition, Plaintiffs added a fourth plaintiff as a party. (A41, A54-55). They also appended two notices of Huerta's right to sue issued by the United States Equal Employment Opportunity Commission ("EEOC"). (A68-A69). Both notices provide that "[l]ess than 180 days have elapsed since the filing date" with a certification that "the Commission's processing of this charge will not be completed within 180 days from the filing date." Id.

On October 31, 2023, the JD Defendants renewed their request for a pre-motion conference. (A70-73). There, the JD Defendants argued that Plaintiffs failed to bolster their allegations of wage-and-hour violations in any way and failed to exhaust administrative remedies as is required by the ADA. Id.

On November 7, 2023, Plaintiffs opposed the motion. (A74-76).

On April 5, 2024, the JD Defendants moved to dismiss. (A80-106).

On May 17, 2024, Plaintiffs opposed the JD Defendants' motion. (A107-137).

On March 3, 2025, Judge Karas issued an Opinion & Order denying Defendants' motion to dismiss. (A138-166).

The district court relied on this Court's recent decision in Herrera v. Comme des Garcons, Ltd., 84 F.4th 110 (2d Cir. 2023) to find that the wage-and-hour claims were properly pled because Plaintiffs plausibly alleged working more than forty (40) hours per week. (A148-153).

3

While the district court correctly found that there were insufficient allegations against Bissoon to qualify her as an individual employer, it found that the complaint was sufficient as to Deane because it included allegations that "Huerta contacted Deane to discuss his return to work," "Deane initially informed Huerta he no longer had a position with Defendants," "Deane was also in direct contact with Borja," and "Deane was involved in the offer to transfer Huerta." (A153-160). The district court acknowledged that these allegations were thin. Id.

As to Huerta's ADA claim, the district acknowledged the split among courts within the Second Circuit and outside of it, it was persuaded by the analysis employed by the majority of courts to consider the issue, finding that there is nothing in the text of the statute prohibiting early right-to-sue letters and that they do not conflict with the statute's purpose. (A160-165).

Finally, the district court denied the JD Defendants' motion for it to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. (A165-166).

On April 2, 2025, the JD Defendants appealed the Opinion & Order to the United States Court of Appeals for the Second Circuit (Docket No.: 25-810). (A167.)

### B.    Statement of Facts

In support of their FLSA and NYLL claims, Plaintiffs allege that: (i) Huerta "regularly" worked seventy-eight (78) hours per week at $17.00 per hour for "all

4

hours worked" and claims, without any factual details in support, that he was paid only his "regular rate" for hours worked in excess of forty (40) hours per week (A49 ¶¶ 46, 48); (ii) Mera "regularly" worked fifty-seven (57) hours per week at $12.50 or $14.00 per hour (A52 ¶¶ 66, 68); (iii) Florez "regularly" worked seventy-one (71) hours per week at $14.00 per hour. (A53 ¶¶ 72, 74); and (iv) Borja "regularly" worked thirty-five-and-a-half (35.5) to fifty (50) hours per week at $13.50 or $14.00 per hour (A54-56 ¶¶ 77-82, 85-86).

In support of Heurta's ADA claim, he alleges that he exhausted his administrative remedies by filing a charge with the EEOC, and that he was issued a Notice of Right to Sue on September 19, 2023 and September 20, 2023. (A42 ¶¶ 5-6, A68-69). Although Huerta does not reference *when* he filed his charge(s) with the EEOC, both notices of right to sue state: "[l]ess than 180 days have elapsed since the filing date." (A68-69).

## SUMMARY OF THE ARGUMENT

The Amended Complaint does not state a claim upon which relief can be granted under the FLSA. This is because Plaintiffs' allegations that they regularly worked in excess of forty (40) hours per week is insufficient without any supporting factual context concerning the amount of money they received each week.

Herrera is inapposite to this case because the plaintiffs there were allegedly misclassified, and this Court expressly reaffirmed Nakahata, Lundy, and DeJesus.

As to the ADA claims, the Opinion & Order should be reversed because the D.C. Circuit Court of Appeals and a long line of cases in district courts within the Second Circuit properly hold, upon examining the legislative history of Title VII, that its statutory text plainly invalidates any early right-to-sue letter such that no deference is required to any regulation promulgated by the EEOC. This is because the 180 day period set forth in Title VII serves as a stopgap to prevent opening the floodgates of discrimination suits battering federal courthouse doors, to permit the EEOC to investigate charges of discrimination, decide whether to sue on behalf of charging parties, and permit conciliation efforts to dispose of cases informally through settlement conferences and other forms of alternative dispute resolution.

## ARGUMENT

## APPELLATE STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) dismissal, the Second Circuit must accept as true all non-conclusory factual allegations in the complaint and draw all reasonable inferences in the Plaintiff's favor. See, e.g., Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

Further, the Second Circuit must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to

dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (citing 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 & Supp. 2007)).

If the facts alleged are ambiguous, the applicable substantive law defines the range of inferences that are permissible. See, e.g., Iqbal, 556 U.S. at 675 ("In Twombly, [550 U.S.] at 553-554 ... the Court found it necessary first to discuss the antitrust principles implicated by the complaint").

Accordingly, the Second Circuit should "begin by taking note of the elements a plaintiff must plead to state a claim ...." See Id.

i.      Sufficiency of FLSA Allegations

In order to state a claim for overtime wages under the FLSA, a plaintiff must allege a single "a single workweek in which [he] worked at least 40 hours and also worked *uncompensated* time in excess of 40 hours[.]" See Burke v. New York City Tr. Auth., 758 Fed. Appx. 192, 195 (2d Cir. 2019), cert denied, 140 S.Ct. 852 (2020) (citing Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013); Nakahata v. New York–Presbyterian Healthcare Sys., 723 F.3d 192, 201 (2d Cir. 2013)).

The FLSA generally requires employers to pay "employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of

forty hours per week." See Fernandez v. Zoni Language Centers, Inc., 858 F.3d 45, 48 (2d Cir. 2017) (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 533 (2d Cir. 2015) (citing 29 U.S.C. §§ 206–207)).

An employee's average hourly wage is calculated "by dividing his total remuneration for employment ... in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." See 29 C.F.R. § 778.109.

"[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." See Dejesus v HF Mgt. Services, LLC, 726 F.3d 85, 88 (2d Cir. 2013); see also Lundy, 711 F.3d at 114; Nakahata, 723 F.3d at 201.

As set forth below, despite two (2) attempts, Plaintiffs have altogether failed to state a plausible FLSA claim for overtime.

ii.  Failure to Exhaust Administrative Remedies under the ADA

The Second Circuit has repeatedly held that "[a]s a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." See Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018); see also 42 U.S.C. § 12117 (applying Title VII's exhaustion requirements to ADA claims).

8

Indeed, "exhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme, and one with which defendants are entitled to insist that plaintiffs comply." See Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000). A claimant must exhaust administrative remedies through the EEOC before bringing Title VII claims to court. See Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). Title VII requires a one hundred and eighty (180) day conciliation period before any civil action can be brought against a respondent charged with discrimination. See 42 U.S.C. § 2000e–5(f)(1).

Title VII expressly provides that:

> If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after giving such notice a civil action may be brought against the respondent named in the charge.

Id. "Only after 180 days have elapsed may the charging party pursue his or her claims in court." See Gibb v. Tapestry, Inc., No. 18-CV-6888 (LAP), 2018 U.S. Dist. LEXIS 204112, at *11 (S.D.N.Y. Nov. 30, 2018).

The issuance of a premature Notice of Right to Sue is grounds for dismissal without prejudice and requires remand to the EEOC. See Gibb, 2018 U.S. Dist. LEXIS 204112, at *11 (granting motion to dismiss Title VII claim where EEOC issued right-to-sue letter fifty-six (56) days after EEOC charge was filed); Rodriguez v. Connection Tech., 65 F. Supp. 2d 107, 112 (E.D.N.Y. 1999) (holding that EEOC's "issuance of a right-to-sue letter, only 39 days after the filing of the complaint, was unwarranted and in violation of [Title VII's] 180 day mandatory waiting requirement"); Henschke v. N.Y. Hosp.-Cornell Med. Ctr., 821 F. Supp. 166, 171 (S.D.N.Y. 1993) (granting motion to dismiss Title VII claim where EEOC issued right-to-sue letter thirty-one (31) days after EEOC charge was filed).

In each of the above-cited cases, the plaintiff's Title VII claims were suspended pending resubmission of the EEOC charge "for a period long enough so plaintiff's charge will actually have been before the agency for the requisite 180-day period." See, e.g., Gibb, 2018 U.S. Dist. LEXIS 204112, at *22; Henschke, 821 F. Supp. at 171; Rodriguez, 65 F. Supp. 2d at 113.

## POINT I

## PLAINTIFF FAILED TO PLEAD AN FLSA CLAIM

The JD Defendants respectfully submit that the district court's reliance on Herrera was misplaced. This Court held in Herrera that plaintiffs must plead FLSA overtime claims with "specificity." See Herrera, 84 F.4th at 115 (citations omitted).

To satisfy that standard, plaintiffs must sufficiently allege "40 hours of work in a given workweek *as well as some uncompensated time in excess of the 40 hours.*" Id. at 115 (citations omitted) (emphasis added).

The district court below analyzed solely whether the Plaintiffs sufficiently pled working in excess of forty (40) hours, but did not address whether the second similarly necessary element that there was uncompensated time in excess of forty (40) hours. This second element – that there was uncompensated time in excess of forty (40) hours – was assumed in Herrera because they were classified as exempt from the overtime pay requirements of the FLSA and NYLL and paid on a salary basis. Id. at 112. This is not present in this case, where the Plaintiffs were all hourly employees.

Because the Plaintiffs fail to allege how much they earned in a given week, this Court should thus reverse to find that the pleadings are insufficient, as it has previously done in similar circumstances:

> While Paleja may well have sufficiently pleaded that he worked more than 40 hours a week, properly stating an overtime claim under the FLSA additionally requires a plaintiff to allege that he was "uncompensated" for time worked "in excess of the 40 hours." Lundy, 711 F.3d at 114. The sole non-conclusory allegation concerning his compensation — that in one week in September 2019, he was paid "some" $1,400 for working "approximately" 70 hours — is not sufficient to meet that burden. Without, for example, alleging the "regular rate at which [Paleja] [was] employed," 29 U.S.C. § 207(a)(1), Paleja failed to provide the District Court with allegations sufficient to allow for

11

the reasonable inference that the $1,400 "payment failed to include overtime compensation," <u>Paleja</u>, 2021 WL 148948, at \*2. While the facts alleged certainly leave open the possibility that Paleja was insufficiently compensated for overtime, the "mere possibility of misconduct" is not enough to make out a plausible claim. See <u>Iqbal</u>, 556 U.S. at 678 …

See <u>Paleja v. KP NY Operations LLC</u>, No. 21-286-CV, 2022 WL 364007, at \*2 (2d Cir. Feb. 8, 2022).

Here, the Plaintiffs did not provide information sufficient for the district court to find that there was an overtime violation.  Indeed, the allegations concerning the hourly rates that each Plaintiff was paid is insufficient because there is nothing in the complaint to indicate whether the parties *agreed* to the particular rate pled.  <u>See</u> <u>Gorman v Consol. Edison Corp.</u>, 488 F.3d 586, 595 (2d Cir. 2007) (holding that the FLSA generally requires that an employee who works more than forty hours in a week be paid for the excess time at a rate "not less than one and one-half times the regular rate at which he is employed" and that the regular rate is "all remuneration for employment paid to ... the employee"); <u>see</u> <u>also</u> <u>Walling v. Youngerman–Reynolds Hardwood Co.</u>, 325 U.S. 419, 424-25 (1945) (holding that "the hourly rate actually paid the employee for the normal, non-overtime workweek," and "must reflect all payments which the parties have *agreed* shall be received regularly during the workweek, *exclusive of overtime payments*") (emphasis added).

12

Applying the holdings of <u>Gorman</u> and <u>Walling</u>, it is incontrovertible Plaintiffs failed to allege with a sufficient degree of specificity that they worked overtime hours for which they were not compensated. Instead, they impermissibly seek to infer that they were paid at the same hourly rate for all hours worked each week without alleging what the parties *agreed* Plaintiffs would receive for hours worked during the workweek exclusive of overtime. This is fatal to their FLSA claim. Accordingly, Plaintiffs fail to state a claim under the FLSA.

## POINT II

## THE COMPLAINT FAILS TO EXHAUST ADMINISTRATIVE REMEDIES

Title VII requires a one hundred and eighty (180) day conciliation period before any civil action can be brought against a respondent charged with discrimination. See 42 U.S.C. § 2000e–5(f)(1). Indeed, Title VII provides that:

> If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after giving such notice a civil action may be brought against the respondent named in the charge.

<u>Id.</u> "Only after 180 days have elapsed may the charging party pursue his or her claims in court." <u>See</u> <u>Gibb v. Tapestry, Inc.</u>, No. 18-CV-6888 (LAP), 2018 U.S. Dist. LEXIS 204112, at *11 (S.D.N.Y. Nov. 30, 2018).

13

In this case, Huerta requested an early right-to-sue letter from the EEOC, depriving it of the ability to investigate or conciliate. The facts present on this appeal indicate the complete abandon by both Huerta and the EEOC in complying with the statutory requirements of the ADA and provide a cautionary tale to this Court about the negative effects of permitting early right-to-sue letters.

As an initial matter, the JD Defendants' objection to Huerta's failure to exhaust administrative remedies must be raised in a timely manner at risk of forfeiture. The Supreme Court of the United States held that exhaustion of remedies is merely a claim-processing rule that an employer forfeits if an objection is not raised in a timely manner. See Fort Bend County v. Davis, 139 S.Ct. 1843 (2019). The Supreme Court held there, too, that Title VII's charge-filing provisions "speak to ... a party's procedural obligations[,]" and require complainants to submit information to the EEOC and to wait a specified period before commencing a civil action. Id. at 1851 (citation omitted).

In 1999, the Court of Appeals for the District of Columbia Circuit was the first appellate court to hold that the EEOC may not issue an early right-to-sue letter. See Martini v. Federal National Mortgage Ass'n, 178 F.3d 1336 (D.C. Cir. 1999), cert. dismissed, 528 U.S. 1147 (2000). There, the D.C. Circuit vacated and remanded a judgment in favor of the plaintiff, Elizabeth Martini, for $903,500.00 on sexual harassment and retaliation claims following a jury trial because the EEOC

14

had granted a right-to-sue letter only twenty-one (21) days after she had filed her charge with the EEOC. Id. The court "conclude[d] that the EEOC's power to authorize private suits within 180 days undermines its express statutory duty to investigate every charge filed, as well as Congress's unambiguous policy of encouraging informal resolution of charges up to the 180th day." Id.

This Court should decide this appeal like the court in Martini did because Title VII clearly and unambiguously provides that the EEOC must act to investigate, conciliate, and decide whether it wants to bring its own action before issuing any notice to a charging party providing him or her the right to sue. A holding to the contrary would only serve to undermine the very purpose of the EEOC's existence as a buffer to the federal courthouse door.

Notwithstanding Title VII's clear requirement that a charge is to remain pending with the EEOC for 180 days, the EEOC has issued a regulation interpreting 42 U.S.C. § 2000e-5(f)(1):

> When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued.., the Commission may issue such notice.. . at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that the District Director [or other delegated officials] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect

15

See Notice of Right to Sue: Procedure and Authority, 29 C.F.R. § 160 1.28(a)(2) (1997). The Martini Court properly found that "Congress clearly intended to prohibit private suits within 180 days after charges are filed," and it therefore held that the EEOC's interpretation of Title VII allowing for early right-to-sue letters violated the clear and unambiguous intent of Congress.

In deciphering the intent of Congress not to allow early private suits, the Martini court relied on a provision of Title VII prescribing the EEOC's duties that requires a prompt determination-within 120 days if practicable. See 42 U.S.C. § 2000e-5(b) ("The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge ....").

The Martini court found that "the Commission's duty to investigate is both mandatory and unqualified," and that Congress "hoped that recourse to the private lawsuit will be the exception and not the rule." See Martini, 178 F.3d at 1346, 1346-47. Further, not allowing early private suits should put pressure on the EEOC to improve its investigatory procedures or perhaps to ask Congress for additional funding so that it would be able to complete its statutory duties. Id. at 1347.

The district court below, in analyzing the statute, found that there is no express prohibition of early right-to-sue letters.

16

But this is directly contradicted by the well-reasoned decision in <u>Martini</u>, and a wealth of binding authority should lead this Court to hold as the D.C. Circuit did in <u>Martini</u>. The Supreme Court, in *dictum*, before 29 C.F.R. § 1601.28 was promulgated, reached the same result in <u>Martini</u> when seven Justices agreed that early suits prior to the expiration of 180 days should not be permitted. <u>See</u> <u>Occidental Life Insurance Co. of California v. EEOC</u>, 432 U.S. 355, 361 (1977) ("a natural reading of [Title VII] can lead only to the conclusion that it simply provides that a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but that he must wait 180 days before doing so").

After the EEOC promulgated 29 C.F.R. § 1601.28(a) (2), the court in <u>Montoya v. Valencia County</u> used similar reasoning to that of the Supreme Court in <u>Occidental Life</u>. <u>See</u> 872 F. Supp. 904, 906 (D.N.M. 1994). In <u>Montoya</u>, the court held that, even exercising the deference to the Commission required by <u>Chevron</u>,[2] the EEOC's interpretation was "patently inconsistent with section 2000e5(f)(1)." <u>Id.</u>

The court therefore rejected the allowance of an early suit and subsequently granted the defendants' motion to dismiss the case; the court expressed sympathy for the EEOC's difficulties in carrying out its duties but suggested that the proper way to resolve the lack of funding and inability to investigate all charges within the

---

[2] <u>See</u> <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984).

statutory time limit was to ask Congress to amend the statute or increase funding, and that unilateral action by the agency in issuing a regulation contrary to its underlying statute was not the solution. Id. ("The Commission must look to Congress to amend the statute or otherwise ease its regulatory burden").

Similarly, in New York v. Holiday Inns, Inc., the district court noted the attractiveness of allowing plaintiffs to sue prior to the expiration of the time period when the EEOC is backlogged, but quoted the *dictum* from Occidental Life stating that it was Congress' intent that 180 days must elapse before charges could be filed in district court. See 656 F. Supp. 675, 679 (W.D.N.Y. 1984). The court in Holiday Inns noted that despite the apparent "futility of forcing victims of discrimination to 'mark time' when it appears that the EEOC will be unable to investigate their charges or reach conciliation proceedings within the 180-day period," arguments for allowing early suits should be addressed to Congress rather than to the judiciary. Id. at 679-80.

Other courts have noted that the purpose of the 180-day period is to induce conflict resolution through conciliation within the EEOC rather than litigation. See Mills v. Jefferson Bank E., 559 F. Supp. 34, 35 (D. Colo. 1983) (collecting cases).

All of these reasons support reversing the district court's decision here.

Of particular import, the Court in <u>Martini</u> examined the legislative history behind Title VII in conjunction with 42 U.S.C. § 2000e-5(b) in finding that early right-to-sue notices are invalid.

Moreover, separate and apart from the EEOC's mandate to investigate every charge as set forth in the statute and observed by <u>Martini</u>, attention must be given to the EEOC's equal mandate to engage in conciliation efforts with respect to all charges filed with the EEOC. Congress indicated its belief that informal resolution of charges, even as late as the 180th day, would be preferable to allowing complainants to sue earlier. <u>See</u> <u>Martini</u>,178 F.3d at 1347.

In opposition to the instant appeal, Plaintiffs will undoubtedly rely on the Ninth, Tenth, and Eleventh Circuit Courts' decisions which run contrary to <u>Martini</u> but are inapposite to the instant case for numerous reasons.

First, their procedural postures dealt with motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rule" or "Rules") or motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), whereas here, Appellees move for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). <u>See</u> <u>Walker v. United Parcel Serv. Inc.</u>, 240 F.3d 1268, 1275 (10th Cir. 2001) (hereinafter "<u>Walker</u>") (appeal from Order granting summary judgment pursuant to Rule 56); <u>Sims v. Trus Joist MacMillan</u>, 22 F.3d 1059, 1061-63 (11th Cir. 1994) (hereinafter

"Sims") (appeal from Order dismissing complaint due to lack of subject matter jurisdiction pursuant to Rule 12(b)(1)); Saulsbury v. Wismer & Becker, Inc., 644 F.2d 1251, 127 (9th Cir. 1980) (hereinafter "Saulsbury") (appeal from Order granting summary judgment pursuant to Rule 56).

Second, reading the statute as a whole, and not limiting the analysis of the provision in 42 U.S.C. § 2000e-5(f)(1) leads to the inescapable conclusion that a plaintiff must wait 180 days in order to proceed with filing suit. The Court in Martini held as much, while the courts in Walker, Sims, and Saulsbury never addressed this issue. As a result, this Court should align itself with the reasoning set forth in Martini.

But there are other reasons why Walker, Sims, and Saulsbury are to be afforded no weight.

In Walker, the Tenth Circuit acted in the interests of justice to save a plaintiff from being deprived of the right to pursue her Title VII claim on technical grounds. This risk and injustice is not present here, as the JD Defendants do not seek the dismissal of Huerta's claims with prejudice, and a decision dismissing and remanding the case to the EEOC for investigation purposes and conciliation efforts will not deprive him of his day in court should the parties not be able to reach a resolution.

In Saulsbury, the Ninth Circuit dealt with a similar situation where it also acted in the interests of justice to save a plaintiff from losing her right to pursue her claim due to technical, legal, and procedural grounds. Again, this risk is not present here.

Similarly, in Sims, the defendants there sought dismissal for lack of subject matter jurisdiction. Here, where Defendants move to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and Plaintiff can in no way disavow her duty under Rule 8 to plead that she has exhausted her administrative remedies prior to proceeding to suit, the Eleventh Circuit's decision is inapposite. See Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015); see also Montesano v. Principi, 47 Fed. Appx. 608, 609 (2d Cir. 2002) (summary order dismissing claims for failure to exhaust administrative remedies).

Huerta indisputably failed to exhaust his administrative remedies which is apparent from a review of the complaint. As such, the Opinion & Order must be reversed.

Indeed, this Court itself has only permitted a litigant to avail himself of an early right-to-sue letter in a very limited circumstance. In Weise v. Syracuse Univ., this Court held that it was appropriate for the EEOC to issue a Notice of Right to Sue when there was a prior charge against the same employer that had been pending before the EEOC for more than 180 days, and conciliation seemed unlikely. See 522

21

F.2d 397, 412 (2d Cir.1975) ("While it is true that, absent the dismissal of a charge by the EEOC, the Notice should not issue until the charge has been before the Commission for at least 180 days, ... [t]o require the EEOC to hold the second charge for 180 days would not have advanced the conciliation purposes of the Act and would only have served to delay the proceedings").

While <u>Weise</u> was decided before the enactment of 29 C.F.R. 1601.28(a)(2) and, therefore, did not address the relationship between it and 42 U.S.C. § 2000e-5(f)(1), its weight still controls. Crucially, subsection (b) of the statute at issue here mandates the EEOC to investigate the charge. <u>See</u> 42 U.S.C. § 2000e-5(b). Here, the JD Defendants did not receive notice of the Appellant's charge. As such, the EEOC could not have investigated the claim, nor could it have even attempted conciliation, because it did not give the EEOC nor the Defendants any opportunity whatsoever to engage in conciliation efforts.

Huerta may argue that because the EEOC and state administrative agencies are so overwhelmed with charges that they could not possibly investigate more than a small fraction of them within 180 days, early right-to-sue letters may be permitted. However, as set forth *infra*, Congress knew all about how the EEOC was overwhelmed when it enacted Title VII.

To that end, to the extent that this Court finds 42 U.S.C. § 2000e-5(f)(1) is ambiguous (which it is not), the law is clear that courts must look to the legislative

22

history in determining Congress' intent. See Fed. Hous. Fin. Agency v. UBS Americas Inc., 712 F.3d 136, 141 (2d Cir. 2013). A review of the statute's legislative history can only permit this Court to find that a plaintiff must wait 180 days before proceeding to federal court with a discrimination complaint. When Congress wrote section 2000e-5(f)(1) in 1972, it knew all about the long delays in EEOC processing of discrimination charges. See S.REP. NO. 92–415, at 23 (1971); see also H.R.REP. NO. 92–238 (1971), reprinted in 1972 U.S.C.C.A.N. 2137, 2147. Congress enacted the 180–day provision as "a means by which [an aggrieved party] may be able to escape from the administrative quagmire which occasionally surrounds a case caught in an overloaded administrative process." See 1972 U.S.C.C.A.N. at 2148; see also S.REP. NO. 92–415S.REP. NO. 92–415, at 23.

After the House and Senate passed the 1972 amendments, the Conference Committee explained in a statement accompanying the Conference Report:

> [The 180–day provision] is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission ... does not act with due diligence and speed. Accordingly, the [180–day provision] allow[s] the person aggrieved to elect to pursue his or her own remedy under this title in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.

See 118 CONG. REC. 7168 (1972) (section-by-section analysis of amendments).

In addition, two (2) major sponsors of Title VII clearly understood the statute to prohibit early suits.

Senator Javits said that it required complainants "necessarily [to] sit [ ] around awaiting 6 months." <u>See</u> 118 CONG. REC. 1069 (1972) (Senate debate). Senator Dominick called it a "180–day private filing restriction." <u>Id.</u> There is therefore no merit to the argument that Congress did not intend for a discrimination plaintiff to wait before filing suit.

Based on the foregoing, there is no question that Congress intended to require charging parties to forebear filing suit in court until 180 days had passed. Indeed, the wisdom behind waiting before a charging party can proceed to suit can be summed up by the old adage that the two most powerful warriors are patience and time.

This Court must therefore reverse the district court's decision.

## POINT III

## PLAINTIFFS MUST BE DENIED LEAVE TO AMEND THE COMPLAINT

It is anticipated that Plaintiffs will argue that they should be given leave to amend in the event of dismissal, and that even if the basis for dismissing the Complaint was legitimate, they should nonetheless be given some kind of "meaningful opportunity to further amend." But the Plaintiffs have already been given an opportunity to amend and the complaint remains deficient.

To the extent the denial of a motion for leave to amend is based on futility, it rests on a legal conclusion, which the Second Circuit reviews *de novo*. <u>See</u> <u>Shimon</u> <u>v. Equifax Info. Servs. LLC</u>, 994 F.3d 88, 91 (2d Cir. 2021).

Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) (quotation marks omitted).

Here, after Plaintiffs had been given an opportunity to amend the complaint following the JD Defendants' letter motion for a pre-motion conference in anticipation of a motion to dismiss, they failed to assert then and there that an amendment was requested, let alone necessary. (A107-137).

Further, a district court is not required to grant leave to amend when it grants a motion to dismiss based on pleading deficiencies, as it should here. See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG, 752 F.3d 173, 188 (2d Cir. 2014).

Finally, because – as set forth above – the pleading deficiencies complained of were set forth in Defendants' letter motion for a pre-motion conference in anticipation of their motion to dismiss, they were not unforeseen such that leave should be granted once more to amend. See Banco Safra S.A.-Cayman Is. Branch v Samarco Mineracao S.A., No. 19-3976-CV, 2021 WL 825743, at *5 (2d Cir. Mar. 4, 2021) ("And Banco Safra had ample opportunity to amend its complaint to cure the … deficiencies. It is thus "unlikely that the deficiencies ... were unforeseen") (citing City of Pontiac Policemen's & Firemen's Ret. Sys., 752 F.3d at 188.

Accordingly, granting leave to amend would be futile and must be denied.

## CONCLUSION

For all of the foregoing reasons, the JD Defendants appeal must be granted on the ground that the Complaint fails to state a claim upon which relief can be granted under the FLSA and the ADA.  This Court must therefore reverse the decision of Judge Karas.

Dated: Jamaica, New York
      June 23, 2025

Respectfully submitted,

**SAGE LEGAL LLC**

* /s/ Emanuel Kataev, Esq._____*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*J.D. Workforce, Inc., and*
*Steven Deane*

26

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 25(a)(6)

This brief has been scanned for viruses and no virus was detected.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of App. Rule 32(a)(7)(B).

This brief contains 6,054 words, excluding the parts of the brief exempted by App. Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of App. Rule 32(a)(5) and the type style requirements of App. Rule 32(a)(6).

This brief has been prepared in a proportionally spaced typeface using Word 14 point Times New Roman.


Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney


Dated at Jamaica, N.Y.
This 23rd day of June 2025

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Respectfully submitted,

/s/Emanuel Kataev, Esq.
Attorney

Dated at Jamaica, N.Y.
This 23rd day of June 2025